Judge Underwood
delivered the opinion of the Court.
br December, 1819, Speed and Wilson; as partners, executed their note to Jackson, for $4407 55 cents, to be paid on or before the 1st of March, 1821.
On the 4th of December, 1820, Jackson assigned the note to Bristow, and took from him; an instrument of writing, in substance, promising tt> collect the amount of the note, and to apply the money in discharge of debts, due by Jackson, for which, Bristow had become surety; and stating, that the object of the assignment was to secure Bristow.
A judgment was obtained by Bristow, against Speed and Wilson; who, in June, 1821, replevied it, with Daniel Wilson and Baxter D. Chealbam, théir sureties. Bristow, James Wilson, partner of Speed, and Daniel Wilson, the sdrety, all having died, Rebecca Bristow, and George Waller, administratrix andadmmistratorof Bristow, deceased, by scire facias, Obtained judgment for execution, against Speed and Cheatham, in September, 1822.
Thereupon, Speed filed his bill in chancery, alleging, that Bristow in 1817, executed his obligation to Turner Camac, conditioned to pay him ‡793, in three equal payments, in one, two, and three years, with interest; that said Camac, had assigned said obligation to Leonard Jones, on the 22d May, 1821; that Said Jones,, had assigned the same to him, Speed, on *57 ihe 14th February, 1822; and, that Bristow's estate was insolvent. Wherefore, he prayed for an injunction and set off. He made Jackson a defendant, gesting,thathehad some claim orinterest,in the money due by him and Cheatham, as the surviving obligors in the replevin bond.
Jackson answered, exhibiting his contract with Bristow, shewing the terms upon which the assignment was made to him as above, claimed the whole judgment, although, in the name of Bristow, made his answer a cross bill; and prayed, that the money might be paid over to him, &c. The court rendered a decree ,in favor of Speed, perpetually injoining $1,245, part of the judgment, that sum being the amount of the principal and interest of the obligation, executed by Bristow, toCamac, and which was allowed ás a set off, according to the praye# of the bill.
Upon the foregoing facts, this question arises: shall Speed be permitted to set-off the amount of the obligation, assigned him, and thereby deprive Jackson of the money? for, as it is .agreed on all sides, that Bristow’s estate is insolvent, Speed (if he paid value for the obligation) of Jacksoh must lose. But for the allegation in Speed’s bill, that Bristow’s estate was insolvent, he would have no grounds,upon which to ask the interposition of the chancellor.
His application to the Chancellor, is tolerated? because, the legal remedy would be inefficient. But we apprehend, that the chancellor ought not to aid him, on account of this defect of remedy at law,if, by doing so, the superior equitable rights of others, would thereby, be sacrificed. What is the nature of Jackson’s claim? Is it superior to that of Speed, in equity? Jackson did not assign the note to Bristow, because Bristow had paid him for it; but the legal title to the note .was vested in Bristow, as a security to him, against losses, which he might sustain, on account of liability to pay Jackson’s debts. It was but a pledge or pawn, and Jackson, notwithstanding the assignment, continued to be deeply interested in the note. The monev arrising from its collection, Was té *58 be applied to the payment of Jackson’s debts; tel this end, Bristow was trustee for Jackson. I
Mote assigned to enable as-signee to collect and pay over proceeds, in discharge of debts for which he is security for assignor, no demand against as-signee, acquired swbse-f^aen^oaR besetoffin equity, a-no~te even on ’ ground ofin-alienee For-assignee is, quasi, trustee-for a9S1Snor•
*58 Suppose Jackson had been compelled to pay all thel debts, for which Bristow Was surety, before Bristow] had collected any of the money from Speed and Wilson, would a court of chancery permit Bristow to collect from Speed and Wilson, upon a bill filed by Jackson, stating the fact,- that Bristow was insolvent, and that he was discharged from all liability, by the payment of the debts, forwhich he had been bound?
Under such circumstances, we are of opinion, that a court of equity might properly interpose, to prevent Jackson’s money in reality, although, ostensibly Bris-tow’s, from getting into the hands bfthe latter. We are, also, of opinion, that a court of equity, may equally interpose, to prevent Speed from appropriating money to his use, by asserting a claim against Bristow, which really belongs to Jackson, from every conscientious consideration.
Suppose Bristow, in this case, had collected the judgment, and Speed and Jackson, were both asserting claim to the money, under the contracts now relied on by them, which ought to prevail in conscience? Speed would present his obligation, and say, here is the bond I purchased on the 14th February, 1822, award me the money; while Jackson, would exhibit Bristow’s agreement of the same date, with the assignment, stipulating to dispose of the money to Jackson’s use; and, also shewing, that Jackson always retained an equitable interest in the money.
1 Jackson’s claim being, by the contract, attached to this particular fund in which, he retained'an equitable interest, after parting with the legal title, should¡in our opinion, prevail over the mere chose in action of Speed, which created no lien on the particular fund, but only confejred a right to proceed at law, against Bristow. But it may be said, that the case is different from that supposed, because Bristow has not yet collected the money; and Speed may use the obligation, he holds, as a shield, to prevent parting with his money, which, without such shield, he will be coerced to do, under the judgment. This would be good morality, and good law too, (Dickesron vs. Chism’s *59 dministrators, IV. Monroe, 1,) if it ttere not for the aramount equity of Jackson, whose claim is oldest, nd possesses a peculiar merit.
prl-or equity should not be-defeated by mere)y because owner of snbsequeni was ignorant existence hePureSased° or acquired subsequent.
It is contended, however, by Speed, that at the time e purchased or procured the bond on Bristow, he ad no knowledge of Jackson’s claim; and, therefore, ackson ought not to be permitted to assert his claim i opposition to the set off', sought for by Speed. But ris argument is not allowed, because it does not ap-ear that Jackson done any act to forfeit' his prior quity, and because, whenever an appeal is made to le chancellor, for aid, and it appears that manifest ljustice would result from affording aid, to the pre-idice of an innocent person, the chancellor is not ound to. sacrifice such person; and because, in this ase, Jackson and Speed, are both appealing to the hancellor, and it is his duty to decide between them, peed has no preference, under the maxim, vigi-mtibus non dormienlibus subservient leges. ' °
We have thus placed the co'ntrovesy, between peed and Jackson, upon grounds, as favorable to peed, as the record will warrant, and the conclusion f our minds is, that Speed is not entitled to his set-off) > the injury of Jackson.
Speed obtained the note or obligation, on Bristow, fter he was dead, at least, such is our presumption; >r it was not a month after the date of Jones’s assignment to Speed, before the scire facias issued, in the. amc of Bristow’s administratrix and administrator, > revive; but whether he obtained Bristow’s obliga-on, before or after his death, and without notice-of-ny claims to the judgment against him and Cheat-am, by others, we cannot perceive the principle upon hich abona, fide claimant of the judgment, will lose, is right, merely because Speed was ignorant of its xistence. Besides, the practice of purchasing dg-mnds, against judgment creditors, after the rendition f the judgments, wi th a view to set them off against the idgments, upon allegations of insolvency, non-resi-3nce,&c. is one which we are not disposed to eneour-tge, by placing such purchaser imabetter condition, ian his vendor or assignor, would be in. To facili-ite such practices, would be to encourage suits and. >ecqlations.
■Written acknowledgement of subpoena, without proof of its genuineness, is not sufficient service to authorize decree.
Triplett, for plaintiff; Demy, for defendant.
Regarding Speed in no bettev situation than his assignor, Jones or Camac would occupy, were he complainant, there can be no doubt, that his bill should be dismissed with costs, and his injunction dissolved with damages, but without prejudice, to proceeding at law, against the representatives of Bristow. Situated as the cause is, that is the proper disposition to make of the complainant’s bill.
We are of opinion, that Jackson would have been entitled to relief upon his cross bill, if the cause, on his part, had been properly prepared. But there is no evidence, that a subpoena was ever served on the administratrix and administrator of Bristow; and they have not answered the cross bill. There is a paper copied in the record, purporting to be an acknowl-edgement of the service of a subpoena by the administrator and administratrix, but there is no proof of its genuineness. This is not sufficient, as has been repeatedly adjudged. For this cause, the proper parties not being before the court, it would haye been proper to dismiss the cross bill, without prejudice, but such is not the order of dismissal. Jackson, by the order, is prejudiced to the extent of $1245, which is erroneous. Upon the return of the cause, the court in its discretion, may give Jackson leave to bring the proper parties before the court, make further preparation, or dismiss his cross bill without prejudice.
The decree of the circuit court is reversed, and the cause remanded for proceedings in conformity to this opinion. The plaintiffin error must recover his costs.